IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HOLLIE L. STANSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00516 |
| | ) | |
| FEDERAL HOME LOAN MORTGAGE | ) | By: Elizabeth K. Dillon |
| CORPORATION, *et al*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Hollie Stansbury's home was foreclosed upon after she defaulted on a mortgage loan that she obtained from Wells Fargo's predecessor-in-interest. In this action against Wells Fargo, ALG, Federal Home Loan Mortgage Corporation (Freddie Mac), and Willow Way—four entities involved in the foreclosure and sale of her home—Stansbury asserts that the defendants breached the note and deed of trust and seeks to rescind the sale of her property to Willow Way. Before the court are: (1) a motion to dismiss Stansbury's first amended complaint, in which all defendants join (Dkt. No. 17); (2) an additional motion to dismiss the first amended complaint filed by Willow Way, the ultimate purchaser of the foreclosed property (Dkt. No. 13); (3) Stansbury's motion for leave to file a second amended complaint (Dkt. No. 30), which defendants resist on futility grounds; and (4) Stansbury's motion to amend her motion for leave to file a second amended complaint, which defendants oppose because it is futile and prejudicial to Willow Way. (Dkt. No 35.) All of these motions have been briefed and are ripe for disposition. For the reasons stated below, the court will grant defendants' motions to dismiss and deny Stansbury's requests for leave to amend.

I. BACKGROUND

In 2006, Hollie Stansbury's late husband Richard Stansbury obtained a mortgage loan from Franklin Community Bank. The loan was evidenced by a note that Richard Stansbury signed and secured by a deed of trust that Richard Stansbury and Hollie Stansbury signed. Franklin Community Bank immediately transferred the loan to Sidus Financial, LLC, which in turn transferred it to Wells Fargo.

Richard Stansbury died in 2007, and Hollie Stansbury served as administrator of his estate. At some point, she contacted Wells Fargo to inform the company of his death and to have herself, as administrator, substituted for him on the loan. After Richard Stansbury's death, the loan fell into arrears. On August 19, 2014, Wells Fargo mailed an acceleration notice addressed to Richard Stansbury at the property address, where Hollie Stansbury lived, but Stansbury never received that letter. Stansbury's breach of contract claim rests, in substantial part, on allegations that this letter did not comply with the cure notice requirements of the deed of trust. The court will discuss the letter further in section II.B., below.

In 2015, Wells Fargo approved Richard Stansbury's estate for a trial loan modification plan (the trial period plan or TPP) under the federal government's Home Affordable Modification Program (HAMP). Hollie Stansbury accepted the trial period plan and made three timely payments. However, after her third payment, Wells Fargo notified Stansbury that her application for a permanent loan modification had been denied[1] and directed ALG, its substitute trustee, to foreclose on Stansbury's property. ALG conducted a foreclosure sale on January 4, 2016, and Wells Fargo made the high bid and purchased the property for significantly less than its actual value. Wells Fargo conveyed the home to Federal Home Loan Mortgage Corporation

---

[1] Stansbury's first amended complaint asserted that Wells Fargo told her that it denied her application because it did not receive necessary paperwork from Stansbury. (Am. Compl. ¶ 34.) The proposed amendments change that allegation, but that change does not affect the court's analysis.

(Freddie Mac) by trustee's deed, and Freddie Mac then sold the home, for less than market value and sight unseen, to Willow Way.

Stansbury sued Wells Fargo, Freddie Mac, ALG, and Willow Way. Her first amended complaint asserts three counts. Count One alleges that the defendants failed to comply with provisions of the note and deed of trust requiring that they provide a cure notice to the borrowers, because: (1) the August 19, 2014 letter was incorrectly addressed to Richard Stansbury; (2) the letter did not adequately inform Stansbury of her right to cure; and (3) Stansbury was brought current on her loan by entering into the trial loan modification, and Wells Fargo never sent her another cure notice before the foreclosure sale. Count One also seeks to rescind the sale of the property to Willow Way. Count Two asserts that Wells Fargo violated a consent order between Wells Fargo and the Office of the Comptroller of Currency that, in Stansbury's estimation, regulates Wells Fargo's foreclosure procedures and was incorporated into the deed of trust by the document's "applicable law" provision. Finally, Count Three asserts a stand-alone claim for breach of implied covenants of good faith and fair dealing. Defendants have moved to dismiss all of these counts for failure to state a claim, and Willow Way has filed an additional motion to dismiss asserting that its purchase of the property cannot be rescinded because Willow Way was a good faith purchaser for value. After defendants filed their motions to dismiss, Stansbury filed two motions to amend her complaint. The court will analyze the motions to dismiss and then decide how, if at all, the proposed amendments would affect its analysis.

## II.  DISCUSSION

### A. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178

F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Unadorned allegations of wrongdoing, "formulaic recitation[s]" of the elements of a claim, and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state viable claims. *Id.* (quoting *Twombly*, 550 U.S. at 555–57).

## B. Breach of Note and Deed of Trust

In Count One, Stansbury claims that Wells Fargo breached the note and deed of trust by failing to provide her with the cure notice those documents required. The note and deed of trust were attached as exhibits to Stansbury's amended complaint, and the relevant sections of those documents provide as follows:

> **Note ¶ 6. BORROWER'S FAILURE TO PAY AS REQUIRED**
>
> . . . .
>
> **(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
> **(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the Principal which has not been paid and all the interest that I owe on the that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

4

> **(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(Am. Compl. Ex. A (Note) ¶ 6, Dkt. No. 10-1.)

> **Deed of Trust ¶ 22. Acceleration: Remedies.** Lender shall give notice to the Borrower prior to acceleration following the Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default (c); a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

(Am. Compl. Ex. B (Deed of Trust) ¶ 22, Dkt. No. 10-2.)

Stansbury claims that Wells Fargo violated these provisions in three ways. The first two stem from the August 19, 2014 acceleration notice. First, Stansbury asserts that the letter did not give "notice to the Borrower" as required by the deed of trust because it was addressed to Richard Stansbury, rather than Hollie Stansbury or Richard Stansbury's estate, and because Richard Stansbury was no longer alive when the letter was sent. Second, Stansbury claims that

5

the letter did not clearly communicate that she had the right to cure her default. Third, notwithstanding the terms of the letter, Stansbury claims that her membership in the trial loan modification program brought her current on her mortgage obligations, so the loan documents required Wells Fargo to send her another cure notice before foreclosing on her home, which Wells Fargo never did.

A deed of trust is a contract, which, like any other contract, is construed according to ordinary contract interpretation principles. *Johnson v. Fed. Home Loan Mortg. Corp.*, No. 7:12-cv-507, 2013 U.S. Dist. LEXIS 97713, at *8–9 (W.D. Va. July 11, 2013); *Matthews v. PHH Mortg. Corp.*, 724 S.E.2d 196, at *200–01 (Va. 2012). "Under Virginia law, a viable breach of contract claim has three elements: '(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" *Mayo v. Wells Fargo Bank, N.A.*, No. 4:13-cv-163, 2015 U.S. Dist. LEXIS 26383, at *12 (E.D. Va. Mar. 4, 2015) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)); *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014).

The Supreme Court of Virginia has defined a "material breach of contract" as "a failure to do something that is so fundamental to the contract that the failure to perform the obligation defeats an essential purpose of the contract." *Countryside Orthopaedics v. Peyton*, 541 S.E.2d 279, 285 (2001). The essential purposes of a deed of trust are two-fold: "to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debts and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Matthews*, 724 S.E.2d at 200. In Virginia, "adherence to a Deed of Trust is measured by the standard of substantial compliance." *Mayo*, No. 4:13-cv-163, 2015 U.S. Dist. LEXIS at *15 (citing *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 497 S.E.2d 747 (Va. 1998)).

Before deciding whether Wells Fargo failed to comply substantially with the deed of trust, the court must address Stansbury's challenge to the applicable standard. Citing two recent opinions from the Supreme Court of Virginia—*Squire v. Virginia Housing Development Authority*, 758 S.E.2d 55 (Va. 2014), and *Newport News Shipbuilding Employees Credit Union v. Busch*, No. 150678, 2016 Va. Unpub. LEXIS 18 (Va. June 16, 2016) (unpublished)—Stansbury argues that Virginia law now requires strict compliance,[2] rather than mere substantial compliance, with the terms of a deed of trust. However, the cases that Stansbury cites do not stand for that proposition.

In *Squire*, the Supreme Court of Virginia reversed the circuit court's grant of a demurrer on claims that a lender had not complied with a deed of trust. The deed of trust in that case incorporated the United States Department of Housing and Urban Development (HUD) regulations that required lenders to conduct, or at least arrange, a face-to-face meeting with borrowers before initiating foreclosure. 758 S.E.2d at 60. Since the plaintiff alleged that the lender had failed to have a face-to-face meeting with her or to make reasonable efforts to schedule such a meeting, the court found her complaint sufficient to survive demurrer. *Id.* at 61. The court did not discuss material breach or the substantial compliance standard in its opinion.

In *Busch*, the lender (Bayport) sent the borrower a pre-acceleration notice that gave the borrower less than the 30-day period required by the deed of trust to cure his default. Bayport then sold the property and filed a summons against the plaintiff for unlawful detainer in Virginia general district court. The general district court awarded Bayport possession, and the plaintiff appealed to the circuit court. The circuit court held that Bayport had not substantially complied with the pre-acceleration notice requirement and instructed Bayport to begin the foreclosure

---

[2] Stansbury uses the term "strict liability" throughout her opposition brief. (Dkt. No. 20.) Of course, this is not a tort case. Although "strict liability" is not an accurate way of stating that Wells Fargo must adhere strictly to the language of the loan documents, the court understands that to be Stansbury's argument.

7

proceedings anew. Bayport appealed, arguing that the general district court lacked jurisdiction to try title in an unlawful detainer proceeding. No. 150678, 2016 Va. Unpub. LEXIS 18, at *1–3. The Supreme Court of Virginia agreed. *Id.* at *5. Since Busch alleged facts that brought the validity of the trustee's deed into doubt, the court found that the case raised a bona fide question of title—a question the general district court lacked jurisdiction to answer. *Id.* at *6–7.

In order to decide whether the general district court lacked jurisdiction, the court applied the rule from *Parrish v. Fannie Mae*, 787 S.E.2d 116 (2016), a companion case decided the same day.[3] There, as in *Busch*, a defendant in an unlawful detainer proceeding challenged the validity of a trustee's deed, and the court addressed the same question: when does a former homeowner's challenge to the validity of a trustee's deed divest the general district court of jurisdiction over an unlawful detainer action. *Id.* at 119. In Virginia, general district courts have jurisdiction to try actions for unlawful detainer but not to try title. *Id.* at 120. The *Parrish* court held that whether the challenge to the trustee's deed removed an unlawful detainer action from the general district court's jurisdiction turned on whether the homeowner's allegations were "sufficient to state a bona fide claim that the foreclosure sale and trustee's deed could be set aside in equity"—that is, whether the allegations would be "sufficient to survive demurrer" if filed as a complaint in the circuit court. *Id.* at 122. Since the *Busch* court applied that rule and found that the general district court lacked jurisdiction, the case implies that Busch could survive demurrer on allegations that the lender did not give the required 30 days to cure.

The court finds no reason in *Busch* or *Squire* to depart from the substantial compliance standard. Whether the lender substantially complied with the terms of the loan agreement was not before the court in *Busch*. No. 150678, 2016 Va. Unpub. LEXIS 18, at *6 n.1. And neither

---

[3] Stansbury relies heavily on *Parrish* in support of her "breach of applicable law" claim, and the court will discuss the case more fully in that section.

8

case stated or implied that deeds of trust were held to a strict compliance standard. In both cases, the lender clearly failed to do something that the deed of trust required as a precondition to foreclosure—in *Squire*, to provide a face-to-face meeting, and in *Busch*, to provide a 30-day notice period. These failures would amount to breaches of the deeds of trust under the substantial compliance standard. So, the court finds no support in those cases for abandoning the substantial compliance standard, and the court will apply that standard here.

Having determined the applicable standard, the court now turns to Stansbury's specific arguments. First, Stansbury argues that Wells Fargo's August 19, 2014 acceleration notice breached the deed of trust because it was not addressed to her, either in her personal capacity or in her capacity as administrator of Richard Stansbury's estate—it was addressed to Richard Stansbury.[4] Although the letter was in fact addressed to Richard Stansbury, that does not amount to a breach of the deed of trust. On its face, the deed of trust required Wells Fargo to send notice to either borrower, at the property address unless otherwise notified. (Deed of Trust ¶ 15.) Richard Stansbury was listed as a borrower on the deed of trust, and the notice was sent to the property address. Sending the acceleration notice to Richard Stansbury clearly accomplished the essential purpose of the acceleration notice provision of the deed of trust, and Stansbury's argument that Wells Fargo had to distinguish between Richard Stansbury and his estate or his administrator would elevate form over substance. After all, it is reasonable to assume that an individual charged with the administration of a borrower's estate would read mail addressed to him, see *Bender v. Rochester*, 765 F.2d 7, 12 (2d Cir. 1985), and requiring this distinction by the

---

[4] To the extent that Stansbury suggests that the acceleration notice was insufficient because she never received it, the court disagrees. Although the court accepts Stansbury's contention as true, the deed of trust makes notice effective when sent by first class mail. (Deed of Trust ¶ 15.) Stansbury does not allege that the notice was never sent, and the fact that she did not receive it does not amount to a breach of the deed of trust. *See Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv472, 2012 WL 4321634, at *5 (E.D. Va. Sept. 19, 2012) (concluding notice was proper because relevant action under plain meaning of terms of deed of trust was mailing); *See also Estrella v. Wells Fargo Bank, N.A.*, No. 2:11cv414, 2011 WL 6825619, at *3 (E.D. Va. Dec. 28, 2011) (concluding notice was proper because date of mailing satisfied terms of deed of trust).

9

lender would defeat the purpose of having an administrator. Accordingly, the court finds that Wells Fargo substantially complied with the note and deed of trust by sending the cure notice to Richard Stansbury at the property address.

Next, Stansbury argues that, even if the acceleration notice had been addressed properly and even if she had received that notice, the notice was defective because it did not communicate that Stansbury had the right to cure as required by the deed of trust. In support of this position, Stansbury cites the following language from the letter:

> You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required. *However, any future negotiations attempting to reinstate your loan or any payment of less than the full amount due shall not require Wells Fargo Bank, N.A.'s waiver of the acceleration unless otherwise agreed to, in writing, by Wells Fargo Bank, N.A.*

(Compl. Ex. C (emphasis added).) In Stansbury's estimation, the emphasized language suggests that, even if a borrower tried to cure, Wells Fargo could still foreclose. Stansbury claims that this language was part of Wells Fargo's plan to prevent borrowers from curing. Of course, homeowners who believed that Wells Fargo could foreclose on their home even if they tried to cure would be less likely to put money toward curing their default. So, Stansbury argues, by using language that made borrowers think that they did not have an absolute right to cure, Wells Fargo sought to give itself more opportunities to foreclose on homes.

It is well established that "[a] deficient acceleration notice may constitute a material breach." *Johnson*, No. 7:12-cv-507, 2013 U.S. Dist. LEXIS 97713, at *9 (citing *Bayview Loan Serv., LLC v. Simmons*, 654 S.E.2d 898, 901 (Va. 2008)). But language in an acceleration notice need not be identical to the language of the deed of trust in order to comply with it. *Townsend v.*

*Fannie May*, 923 F. Supp. 2d 828, 836 (W.D. Va. 2013). Language that is functionally equivalent and communicates the borrower's rights to the borrower does not defeat the essential purpose of the deed of trust. *Id.*; *Mayo*, No. 4:13-cv-163, 2015 U.S. Dist. LEXIS 26383, at *8; *Matanic v. Wells Fargo Bank, N.A.*, No. 3:12-cv-472, 2012 U.S. Dist. LEXIS 134154, at *15 (E.D. Va. Sept. 19, 2012); *see Johnson*, No. 7:12-cv-507, 2013 U.S. Dist. LEXIS 97713, at *10 (noting that "immaterial differences in language will not nullify a substantially conforming notice of acceleration").

Reading the acceleration notice as a whole, the court cannot agree that the quoted language casts doubt on Stansbury's right to cure. The acceleration notice clearly describes the acceleration process and tells Stansbury of her right "to reinstate [her] Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required." (Compl. Ex. C.) The language on which Stansbury relies merely establishes that, if she wants to reinstate her loan without paying the balance in full, Wells Fargo must agree to the arrangement in writing. That requirement does not contradict her right to cure by repaying the balance of the loan in full. Thus Stansbury's breach of contract claim cannot proceed on this theory.[5]

Finally, Stansbury argues that, once she entered the HAMP program, her loan was brought out of accelerated status and Wells Fargo was required to send her another acceleration notice before foreclosing on her property. At the very least, Stansbury claims, the language of the TPP documents was ambiguous as to whether the program brought Stansbury out of accelerated status such that a new acceleration notice should be required. Again, the court

---

[5] Two Virginia circuit courts have considered identical language and reached the same conclusion. *McGraw v. Wells Fargo Bank, N.A.*, No. CL16-237 (Spotsylvania Cty. Oct. 17, 2016); *Nester v. Fed. Nat'l Mortgage Assoc.*, No. CL 15-36 (Amelia Cty. May 2, 2016).

cannot agree. Nothing in the referenced documents suggests that Stansbury's participation in the HAMP program brought her underlying loan current; in fact, the documents repeatedly state that Stansbury's loan and loan requirements would remain in effect during the trial payment period and would be modified only upon her completion of the program. (*E.g.*, Am. Compl. Ex. D ("The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period.").) Thus, the court cannot find that Wells Fargo was required to send Stansbury an additional cure notice.

Accordingly, Count One of Stansbury's amended complaint fails to state a viable claim and must be dismissed pursuant to Rule 12(b)(6).

### C. Breach of Applicable Law Provision

In Count Two of her complaint, Stansbury asserts that her deed of trust incorporated an April 13, 2011 consent order between Wells Fargo and the Office of the Comptroller of Currency and that Wells Fargo breached the deed of trust by violating that consent order. Article IX of the consent order required Wells Fargo to submit a plan that included, among other things, procedures to ensure timely and effective communication between Wells Fargo and borrowers during the loan modification and foreclosure process and to ensure that Wells Fargo engaged in good faith efforts at loss mitigation and foreclosure prevention. (Am. Compl. Ex. H (Consent Order) Article IX.) Stansbury asserts that this consent order was incorporated into her loan documents by language in the deed of trust providing that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." (Deed of Trust ¶ 16.) "Applicable Law" is defined elsewhere as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Deed

of Trust ¶ (J).) Wells Fargo argues, among other things, that the consent order is not applicable law for purposes of the deed of trust.[6] The court agrees with Wells Fargo.

Whether the deed of trust at issue here incorporates the April 13, 2011 consent order is a question of contract interpretation. *Wilkins v. United States*, No. 2:15-cv-566, 2016 U.S. Dist. LEXIS 61466, at *9 (E.D. Va. May 9, 2016); *see Townsend v. Fannie Mae*, 923 F. Supp. 2d 828, 841 (W.D. Va. 2013); *see also Matthews*, 724 S.E.2d at 200–01. Courts usually construe phrases like "all applicable law" to exclude laws that are not already applicable at the time the contract was formed, even if those laws would otherwise be relevant to the parties or their agreement. *Townsend*, 923 F. Supp. 2d at 841; *Wilkins*, No. 2:15-cv-566, 2016 U.S. Dist. LEXIS 61466, at *9–10 (collecting cases). Relying on this principle, the United States District Court for the Eastern District of Virginia has declined to read the April 13, 2011 consent order into "applicable law" provisions of deeds of trust executed before that order. *Wilkins*, No. 2:15-cv-566, 2016 U.S. Dist. LEXIS 61466, at *10–11; *Simon v. PNC Bank, N.A.*, No. 2:14-cv-523, 2015 U.S. Dist. LEXIS 50930, at *17–18 (E.D. Va. Apr. 15, 2015).

Stansbury recognizes these cases but asserts that the Supreme Court of Virginia overruled them in *Parrish*, 787 S.E.2d 116 (2016), albeit without analysis. As discussed above, the *Parrish* court addressed the general district court's jurisdiction to hear unlawful detainer cases that raise questions of title and described the situations in which a homeowner seeking to challenge title can divest the general district court of jurisdiction. In that case, the homeowners (the Parrishes) conveyed their property by deed of trust to secure a loan. Eventually, their property was foreclosed upon and transferred by trustee's deed to Fannie Mae, which filed an unlawful detainer action against the Parrishes in general district court. In response to the

---

[6] Defendants also argue that Stansbury lacks standing to enforce the consent order, that the consent order provides no private cause of action, and that the consent order expired in May 2016. The court need not reach these issues.

13

unlawful detainer action, the Parrishes asserted that their deed of trust incorporated 12 C.F.R. § 1024.41(g), a regulation that prevented lenders from foreclosing if the borrower had submitted a loss mitigation application more than 37 days before the foreclosure sale. Since the Parrishes had submitted such an application, they claimed that Fannie Mae could not foreclose. The general district court granted Fannie Mae possession, as did the circuit court on a de novo appeal. *Id.* at 119–20.

On appeal from the circuit court, the Supreme Court of Virginia held that general district courts lack jurisdiction over unlawful detainer actions where the homeowner could raise a legitimate question of title—*i.e.*, where he or she could allege facts sufficient to place the validity of the trustee's deed in doubt. *Id.* at 123. Applying that rule to the facts before it, the court found that the Parrishes' allegations that their deed of trust incorporated 12 C.F.R. § 1204.41(g) and that Fannie Mae violated that regulation by foreclosing on their home despite their loss mitigation application were sufficient to raise a bona fide question of title and divest the general district court of subject matter jurisdiction. In so finding, the court suggested that those allegations would be sufficient to survive demurrer if filed in the circuit court. *Id.*

Stansbury asserts that, because the deed of trust in *Parrish* incorporated regulations that did not exist yet, that case overruled the line of cases finding that applicable law provisions similar to the one at issue in this case did not incorporate the consent order. But *Parrish* did not consider whether the language of the deed of trust properly incorporated the regulations at issue.[7] Instead, the court's holding was based on the Parrishes' *allegations* that their deed of trust

---

[7] Stansbury's brief includes a block quotation, apparently attributed to the *Parrish* court, which recites an applicable law provision identical to the one at issue here. (Pl.'s Br. Opp'n 23–24, Dkt. No. 20.) That block quotation is included without citation in Stansbury's brief and does not appear in the *Parrish* opinion. The court is aware that plaintiff's counsel in this case was the attorney for the homeowners in *Parrish* and is presumably privy to information about the case that the court does not have. But the facts recited in that block quotation were not part of the *Parrish* court's analysis, and plaintiff's representation to the contrary is, at best, misleading.

incorporated those regulations. *See id.* at 119. The cases Stansbury claims *Parrish* overruled are consistent with this conclusion. Those cases do not stand for the proposition that a deed of trust cannot incorporate applicable law that does not exist yet—they simply establish that clear language is necessary to do so. *See Wilkins*, No. 2:15-cv-566, 2016 U.S. Dist. LEXIS 61466, at *10 ("General precepts of contract law direct that, *absent clear language to the contrary*, courts should not interpret contracts to incorporate <u>future</u> changes to the law.") (first emphasis added) (quoting *Condel v. Bank of Am., N.A.*, No. 3:12-cv-212, 2012 U.S. Dist. LEXIS 93206, at *24 (E.D. Va. 2012)). The court therefore disagrees with Stansbury's interpretation of *Parrish*.

This case is indistinguishable from *Wilkins* and *Simon*, and this court reaches the same result. The deed of trust was signed in 2006, over five years before the consent order. The definition of "applicable law" in Stansbury's deed of trust—like the deeds of trust in those cases—does not include language incorporating future changes in the law. Accordingly, the court finds that the deed of trust, on its face, did not incorporate the consent order and that Wells Fargo's purported violations of that order did not amount to a breach of the deed of trust.[8]

### D. Breach of Implied Covenant of Good Faith and Fair Dealing

Count Three of Stansbury's amended complaint asserts that defendants breached implied covenants of good faith and fair dealing contained in the note and deed of trust through their communications during the TPP and ultimately by foreclosing on her property. "In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Wolf v. Fannie Mae*, 512 F. App'x 336, 345 (4th Cir. 2013) (quoting *Enomoto v Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)); *see Virginia Vermiculite, Ltd. V. W.R. Grace & Co.*, 156 F.3d 535,

---

[8] Notably, even if the consent order were incorporated into the deed of trust, it merely required Wells Fargo to submit proposals for handling pre-foreclosure activities—not to take any action vis-a-vis Stansbury. (Am. Compl. Ex. H); *Simon v. PNC Bank, N.A.*, 2015 U.S. Dist. LEXIS 50930, at *17–18 (E.D. Va. April 16, 2015). So Stansbury's claims would fail even if the consent order was part of the deed of trust.

15

541–42 (4th Cir. 1998). "However, 'no implied duty arises with respect to activity governed by express contractual terms.'" *Baird v. Fed. Hom Mortg. Corp.*, No. 3:15-cv-41, 2016 U.S. Dist. LEXIS 41938, at *22 (W.D. Va. Mar. 29, 2016) (quoting *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009)). "Thus, the covenant of good faith and fair dealing does not preclude a party from exercising valid contractual rights, 'as long as that party does not exercise those rights in bad faith.'" *Id.* (quoting *Wolf*, 512 F. App'x at 345).

Although it is not entirely clear from the first amended complaint, it appears that Stansbury's claim for breach of implied covenant of good faith and fair dealing relies on the same factual allegations as her breach of contract claims. Because defendants could not breach their implied covenants of good faith and fair dealing by exercising their contractual rights, and because Stansbury's complaint includes no allegations that defendants exercised contractual discretion in bad faith, dishonestly, or unfairly, *see Wolf*, 512 F. App'x at 345, the court must dismiss this claim. *Baird*, No. 3:15-cv-41, 2016 U.S. Dist. LEXIS 41938, at *22 (dismissing an identical claim in analogous circumstances); *accord Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 456 (E.D. Va. 2014); *Vazzana v. Citimortgage, Inc.*, No. 7:12-cv-497, 2013 U.S. Dist. LEXIS 78541, at *12–13 (W.D. Va. June 4, 2013).

E. **Rescission**

In addition to joining the other defendants' motion to dismiss, Willow Way filed a separate motion asserting that its purchase of the property could not be rescinded because Willow Way was a good faith purchaser for value. The court need not reach this issue. Because the court has determined that each of Stansbury's claims fails as a matter of law, she has no viable claim for rescission against Willow Way.

**F. Leave to Amend**

Having resolved defendants' motions to dismiss, the court must now address Stansbury's requests for leave to amend. At the hearing on defendants' motion, Stansbury's counsel told the court that he had received additional documents from Stansbury that could change some of her factual allegations. On March 1, 2017, Stansbury filed a motion for leave to file a second amended complaint. Based on a letter from Wells Fargo discovered after the amended complaint was filed, the proposed second amended complaint removed an allegation that Wells Fargo denied Stansbury's application because it had not received documents that it had in fact received (Am. Compl. ¶ 72) and added allegations that the newfound communications violated the April 13, 2011 consent order incorporated into the deed of trust by the applicable law provision. (Prop. 2d Am. Compl. ¶¶ 72–76, 79–80.)

Before the court ruled on Stansbury's request for leave to amend, Stansbury filed a motion to further amend the proposed second amended complaint so that she could incorporate a letter she recently received from Wells Fargo. In that letter, a Wells Fargo representative stated that the company had "determined that [it] didn't process [Stansbury's] application submitted 5/6/2014 with the level of service that [it] would like" and offered her a $300 credit toward re-applying for financing. (Pl.'s 2d Mot. Am. Ex. 1.) Stansbury characterizes this letter as a "candid admission" by a Wells Fargo representative that Stansbury's application for a loan modification was "not properly handled by Wells Fargo." (Prop. 2d Am. Compl. (Revised) ¶ 47.)

Federal Rule of Civil Procedure 15 instructs courts to grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "liberal" standard that "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on

17

technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).  The Fourth Circuit has recognized that leave to amend "should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'"  *Mayfield v. NASCAR*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)).  An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); for example, if the proposed amended complaint would itself be subject to dismissal under Rule 12(b)(6).  *See Wilson*, 525 F.3d at 376.

Because Stansbury's complaint could not survive a motion to dismiss even with the proposed amendments, the court will deny her motions for leave to amend as futile.  Although the first set of proposed amendments provides new theories of how Wells Fargo violated the consent order—*i.e.*, by failing to give Stansbury a legitimate reason for denying her loan modification application and by not communicating with Stansbury through a single point of contact (Prop. 2d Am. Compl. ¶¶ 72–76)—the court has already determined that the consent order was not applicable law under the deed of trust.  So, new purported violations of the consent order cannot save Stansbury's claims.

Nor would the May 26, 2017 letter affect the viability of Stansbury's claims.  That letter indicates that Wells Fargo did not process a May 6, 2014 "application for home financing" properly—not an application for a loan modification.  (Prop. 2d Am. Compl. (Revised) Ex. E.)  Stansbury's revised second amended complaint includes a new allegation that she submitted documents associated with her loan modification application on May 6, 2014.  (*Id.* ¶ 38.)  But

even if the court assumes that the May 26, 2017 letter meant to refer to a loan modification application, the court has already examined Wells Fargo's alleged conduct and determined that it did not violate the terms of the deed of trust. A letter suggesting that Wells Fargo believed that it handled unspecified elements of the loan modification process unprofessionally is insufficient, by itself, to establish that it breached Stansbury's note or deed of trust. Thus Stansbury's proposed amendments are futile, and the court will deny her request for leave to amend.

## III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion to dismiss and deny Stansbury's motions for leave to amend.

Entered: August 31, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge